UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JASON DUKES,

    Plaintiff,

vs.                                                                                    CASE NO.: 3:09-cv-631-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

### ORDER AND OPINION

    This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #13). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #17). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of reference dated October 29, 2009 (Doc. #15). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

    The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral

argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

In the instant action, Plaintiff protectively filed for a period of disability, DIB and SSI on August 23, 2006 (Tr. 59, 61, 115-23). Plaintiff alleged disability beginning August 14, 2006 (Tr. 115, 151). Plaintiff's initial claim and reconsideration were denied on December 1, 2006 and April 25, 2007, respectively. Plaintiff then filed a timely written request for a hearing before an Administrative Law Judge of the Office of Hearings and Appeals on May 3, 2007 (Tr. 85). On July 16, 2008, a hearing was held in Jacksonville, Florida, before Administrative Law Judge William H. Greer (the "ALJ"). In a decision dated October 30, 2008, the ALJ determined Plaintiff was not disabled by finding Plaintiff was able to return to his past relevant work as a fast food worker (Tr. 22). The Appeals Council denied Plaintiff's request for review; thus, the ALJ's decision is the final decision of the Commissioner (Tr. 2-5). Plaintiff now appeals (Doc. #1).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for

supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988 ), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*,

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. that pertain to part 404 and disability insurance benefits.

932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *See Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.1512(c).

### III. Background

Plaintiff was born March 31, 1980; thus, he was twenty-six (26) years old on his alleged onset date and twenty-eight (28) years old at the time of the administrative hearing (Tr. 27, 115). Plaintiff completed the 9th grade and quit high school in the 10th grade because, after taking a summer job, he "kinda got used to [making] money" (Tr. 28). A GED or high school diploma were never achieved (Tr. 28). The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), degenerative joint disease, and borderline intellectual functioning (Tr. 13). The ALJ found Plaintiff's past relevant work experience included fast food cook; fast food worker; and roofer (Tr. 22, 29, 33, 34, 138-46). *See also* UNITED STATES DEP'T OF LABOR, Dictionary of Occupational Titles ("DOT") §§ 313.374-010; 311.472-010; and 866.381-010.

### IV. Discussion

Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ erred at Step 3 of his sequential analysis by finding Plaintiff did not meet or medically equal Listing 12.05(C), mental retardation, pursuant to 20 C.F.R. 404 Subpt. P, app. 1, (the "Listings")[2] (Doc. #13 at 5-7). Plaintiff then argues the ALJ erred by not properly determining his Residual Functional Capacity ("RFC") (Doc. #13 at 8-10).

---

[2]The Listing of Impairments is in appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. describe, for each of the major body systems, impairments that the Commissioner considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). The specific listings follow the introduction in each body system, after the heading, Category of Impairments. Within each listing, the objective medical and other findings needed to satisfy the criteria of that listing are specified. An impairment meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525(c)(3).

The undersigned is not persuaded by either of Plaintiff's arguments, *supra*, and shall address each issue in turn.

**A.     Whether the ALJ Erred in Finding Plaintiff did not Meet or Medically Equal Listing 12.05(C)**, **Mental Retardation**

Plaintiff argues that his low-average intelligence quotient ("IQ") scores, combined with the fact the ALJ found he suffered from several severe impairments, demonstrate he has satisfied the requirements promulgated under Listing 12.05(C) (Doc. #13 at 7).  The undersigned finds this argument to be without merit as set forth below.

The evidentiary standards for presumptive disability under the Listings are more stringent than for cases that proceed beyond Step 3 of the sequential analysis because the Listings represent an automatic screening-in based on medical findings rather than an individualized judgment based on all relevant factors in a claimant's claim.  *See* 20 C.F.R. §§ 416.920, 416.926, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 523 (1990).  Mental retardation indicates a lifelong condition characterized by below-average intellect as measured by well-standardized IQ tests.  20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00(D)(5)(a).  The significance of the impairment should be determined primarily on the basis of intelligence testing and accompanying medical reports; however, care should be taken to ensure test results are consistent with claimant's daily activities and behavior, and the IQ score need not be conclusive.  *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00(D)(5)(c); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

According to Listing 12.05, mental retardation refers to those individuals with: (1) significantly sub-average general intellectual functioning; (2) deficits in adaptive functioning;

and (3) manifestation of the deficits in adaptive functioning during the development period (*i.e.*, before age 22). 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05; *see also Crayton*, 120 F.3d at 1219. Further, the introductory material to the mental disorder listings (*i.e.*, the preamble) clarifies Listing 12.05, by stating:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria [*supra*], [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (*emphasis added*).

Subsection C of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05(C). In *Hodges v. Barnhart*, the court held that presenting a valid IQ score, prescribed in Listing 12.05(C), creates a presumption that the mental impairment is lifelong and existed during the development period. 276 F.3d 1265, 1269 (11th Cir. 2001). The court added that the presumption was rebuttable using evidence of the claimant's daily activities and the burden remained with the claimant to prove entitlement to social security benefits. *Id.* Additionally, a claimant's work history may also be used to discount his or her allegation of mental retardation. *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 (11th Cir. 2006).[3]

As an initial matter, Plaintiff's premise for his argument that the ALJ erred by not finding he met the requirements of Listing 12.05(C) mental retardation is faulty. For

---

[3]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

instance, Plaintiff states the preamble, *supra*, "attempt[s] to define mental retardation and plays no role in whether or not the plaintiff has satisfied the requirements of the Listing" (Doc. #13 at 5). This is an incorrect statement of the law, as 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00 clearly states a claimant must satisfy the diagnostic description referenced in the introductory material (*i.e.*, the preamble) in order to meet the delineated mental impairments. Moreover, Plaintiff cited no authority for his contention to the contrary.

Nevertheless, in the instant case, on February 19, 2007, Plaintiff underwent a psychological evaluation and IQ testing by Phillip R. Yates, Ph.D. ("Dr. Yates") (Tr. 309-19). The Wechsler Adult Intelligence Scale–III was administered to Plaintiff; the results of which revealed a Full Scale IQ score of 74, a Performance IQ score of 70, and Verbal IQ score of 81 (all of which range from borderline to low-average) (Tr. 311-13).

In his decision, The ALJ found a diagnosis of mental retardation would be "inconsistent with [Plaintiff's] past employment, educational history, and independent lifestyle" for several reasons (Tr. 16).

First, the ALJ discussed Plaintiff's educational history as not being consistent with Plaintiffs alleged mental retardation (Tr. 16). The ALJ evidenced his decision with the fact that Plaintiff left school in the 10th grade not because of any mental handicaps, but because he "liked earning money" (Tr. 16; *see also* Tr.28). Plaintiff testified to taking Specific Learning Disability ("SLD") classes for reading and math while he was in school; however, he also testified to performing average while in school (Tr. 28).

Second, the ALJ noted Plaintiff was able to gain and maintain employment, and when Plaintiff left a particular occupation, it was not due to any mental handicap (Tr. 16; *see also* Tr. 33-34). For example, Plaintiff left his position as a cook at McDonald's

because his family moved away, and he was fired from his position at a sandwich shop because he was caught giving food away to friends (Tr. 33-34). There is no evidence of record that Plaintiff was hindered in employment, fired, or asked to leave due to any mental deficits. For example, when he was the cashier at a sandwich shop, he overcame his slow mathematical skills by using the cash register to figure out correct change (Tr. 16, 34). Further, Plaintiff's past relevant work included the occupation of fast food cook and roofer, both of which were identified as skilled occupations by the vocational expert ("VE") (Tr. 22).[4] *See also* UNITED STATES DEP'T OF LABOR, Dictionary of Occupational Titles ("DOT") §§ 313.374-010; 866.381-010.

In his Work History Report, Plaintiff noted that, as part of his job as a roofer, he used machines, tools, equipment, technical knowledge or skill, and he also completed report-like documents (Tr. 140-41). Although not considered past relevant work by the ALJ, Plaintiff listed laborer in his Work History Report and noted that he used machines, tools, equipment (fork lift and scaffolding), and technical knowledge or skill to perform this occupation, defined by the DOT as a semi-skilled, industrial truck operator (Tr. 139-40). *See* DOT § 921.683-050. This work history supports the ALJ's determination that Plaintiff's IQ score is inconsistent with his abilities.

Finally, the ALJ referenced Plaintiff's daily activities and independent lifestyle as evidence of inconsistency between his low IQ scores and his functional abilities (Tr. 16). For instance, the ALJ noted that Plaintiff testified to having a wife and three children and

---

[4]Skilled work is work which requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. 20 C.F.R. § 404.1568(c). Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, etc. 20 C.F.R. § 404.1568(c).

that, although he had help with the children, it was due to his alleged physical ailments and not because he is mentally incapable of caring for them (Tr. 16; *see also* Tr. 43-44). Additionally, there was no evidence that Plaintiff had problems getting along with neighbors, coworkers, supervisors, or the general public (Tr. 16). Plaintiff testified that he never had a driver's license; however, there is evidence in Dr. Yates' report that Plaintiff had been arrested in 2005 for driving on a suspended license (Tr. 45, 310). There is also evidence of Plaintiff participating in other ordinary activities, such as attempting to find work, although he was allegedly physically unable to do so (Tr. 31-32). Additionally, there is no evidence that Plaintiff is incapable of dressing or bathing himself or completing any other ordinary daily activities.

For the aforementioned reasons, the undersigned finds the record contains ample evidence to support the ALJ's determination that Plaintiff failed to meet or medically equal Listing 12.05(C), mental retardation.

**B.     Whether the ALJ Erred in Determining Plaintiff's Residual Functional Capacity**

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence (Doc. #13 at 8-10). The undersigned is not persuaded.

Residual functional capacity is an ALJ's assessment of a claimant's remaining ability to do work despite his or her impairments, based upon all of the relevant evidence, including the opinions of physicians, claimant's age, education and work experience. 20 C.F.R. §§ 404.1545(a); 404.1520(f).

Plaintiff argues, *inter alia*, that the ALJ erred in making his RFC determination by not accepting the full opinion of Plaintiff's treating physician, Aika Skelton, M.D. ("Dr. Skelton") (Doc #13 at 8-9). This argument is without merit for the reasons that follow.

When an ALJ disregards the opinion of a treating physician he or she must articulate the reasons therefor. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Further, this Circuit has held that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Id*. Good cause has been found to exist when: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*. 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1140). Further, the weight given to a treating physician's opinion, and any reason for giving no weight, must be specified. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In support of his argument in this regard, Plaintiff first challenges the ALJ's evaluation of Dr. Skelton's June 2008 Medical Impairment Evaluation (Doc. #13 at 8-10; *see* Tr. 253-58). In said evaluation, Dr. Skelton reported that Plaintiff's asthma, Chronic Obstructive Pulmonary Disease ("COPD"), and left knee pain were not disabling conditions, but that his chronic low back pain was a disabling condition (Tr. 254).

As to Plaintiff's specific limitations, she stated, among other things, that Plaintiff would likely miss more than two (2) or three (3) days of work per week; could lift and carry up to twenty (20) pounds at a time; could stand and walk less than one (1) hour and sit for a total of two (2) hours in an eight-hour workday; and that he was restricted in the ability to repeatedly reach in all directions if he had to stretch (Tr. 256-57). She also noted that Plaintiff could alternate between sitting and standing positions for eight (8) hours without having to lie down (Tr. 257). Additionally, Dr. Skelton listed Plaintiff's prescribed medications, including one taken for chronic pain, and reported that they were all effective

in controlling the symptoms related to his conditions (Tr. 255). She also denied that Plaintiff's symptoms were severe enough to interfere with his attention and concentration (Tr. 255). Dr. Skelton further reported that Plaintiff's condition had been, as described, since January 1999 (Tr. 258).

The ALJ gave considerable weight to Dr. Skelton's findings that: (1) Plaintiff's asthma, COPD, and knee pain were not disabling medical conditions; (2) his symptoms were not severe enough to interfere with his attention and concentration; (3) he was able to lift and carry up to twenty pounds at one time; and (4) he was limited in his ability to perform repetitive overhead reaching as such limitations were consistent with the record as a whole (Tr. 21, 255-57). *See also* 20 C.F.R. § 404.1527(d)(4) (providing that generally more weight is given to opinions that are consistent with the record).

The ALJ, however, rejected Dr. Skelton's opinion that Plaintiff's back condition was disabling, as well as her conflicting opinion(s) regarding Plaintiff's ability to sit, stand, or walk, and the number of days he would likely be absent from work each week (Tr. 21-22).

The undersigned finds the ALJ's rejection of these portions of Dr. Skelton's report, *supra*, to be supported by the record evidence as her opinions regarding the same are: (1) inconsistent with her own treatment notes; (2) internally inconsistent with other aspects of the subject evaluation; (3) inconsistent with other evidence of record; and (4) not supported by objective medical findings (Tr. 21-22). *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004) (finding a treating physician's report may be discounted if it is not accompanied by objective medical evidence or is wholly conclusory); *see also Phillips*, 357 F.3d at 1240-41.

As the ALJ pointed out, Dr. Skelton's statements that Plaintiff could only stand for a total of less than one (1) hour and sit for a total of two (2) hours out of an eight-hour workday are internally inconsistent with her coterminous statement that Plaintiff is able to alternate between sitting and standing for a total of eight (8) hours without having to lie down (Tr. 21, 256-57).

In addition, Dr. Skelton acknowledged that she did not have any objective medical evidence, such as back x-rays, to support her opinion that Plaintiff's back condition was disabling (Tr. 21, 254). *See* 20 C.F.R. § 404.1527(d)(3) (providing more weight should be given to opinions supported by medical signs and laboratory findings); *see also Crawford*, 363 F.3d at 1159.

The undersigned finds the ALJ appropriately reasoned that, if Plaintiff's conditions were such that he would be absent from work two to three days per week due to symptoms, Dr. Skelton would likely have not reported that his conditions were controlled by medication or that his symptoms were not severe enough to interfere with his attention and concentration (Tr. 21-22 *see also* 255). Moreover, Dr. Skelton's treatment notes do not indicate that he seeks treatment from her two to three times per week,[5] or that he reports to her that he is incapacitated due to his symptoms on such a regular basis (*see* Tr. 260, 262, 264, 266-67, 272-74, 278, 282, 284, 290-91, 294, 300).

As the ALJ indicated, the MRI scans of Plaintiff's spine noted mostly "mild" abnormalities (Tr. 21; *see also* 202-04, 303-05). Plaintiff's treating and examining sources often observed he had a normal gait, full strength, and no motor or sensory deficits (Tr. 20,

---

[5] Dr. Skelton reported that she treats Plaintiff "monthly" (Tr. 253).

212-14, 236, 238, 240).  Dr. Skelton frequently observed Plaintiff was not in acute distress (Tr. 260, 262, 264, 266-67, 272-74, 278, 282, 284, 290-91, 294, 300).  Furthermore, while Dr. Skelton reported that Plaintiff had the limitations she provided in the evaluation since January 1999 (Tr. 258), the record reveals Plaintiff was able to work as a roofer until August 2006 (Tr. 22, 29, 138).

Based on the foregoing, the undersigned finds substantial evidence supports the ALJ's decision to discount those portions of Dr. Skelton's opinion(s) that he found were either inconsistent or not supported by the record evidence.

With respect to Plaintiff's remaining arguments, it should be noted that Plaintiff provides no supporting authority for his contentions regarding the same (see Doc. #13 at 9-10).  As such, his remaining arguments, *infra*, are deemed waived.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir.1998) ("[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); *Cont'l Technical Services v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir.1991) (finding that a "simple contention" does not present an argument and therefore is waived); *see also Callahan v. Barnhart*, 186 F. Supp. 2d 1219, 1230 n. 5 (M.D. Fla. 2002) ("[s]uch a cursory treatment of a potentially important issue is taken by this Circuit [the Eleventh Circuit] to be a sign that the party has abandoned the issue").

Nevertheless, the Court will address Plaintiff's remaining perfunctory arguments.

First, Plaintiff objects to the ALJ's alleged failure to include in his RFC finding Dr. Lynn Harper-Nimock's opinion that Plaintiff had "moderate to marked" limitations coping

with respiratory irritants (Doc. #13 at 9; *see also* Tr. 214).[6] As an initial matter, it should be noted that the ALJ did account for Plaintiff's respiratory ailments by limiting him from work that would subject him to concentrated or excessive exposure to pulmonary irritants such as dust, fumes, or extremes in temperatures or humidity (*see* Tr. 17). Plaintiff, however, maintains that a moderate to marked limitation in coping with respiratory irritants would require "a need to have filtered air instead of an environment such as a sandwich shop" (Doc. #13 at 9). Plaintiff offers no support for this proposition and the Court has found none.

Furthermore, Dr. Harper-Nimock's assessment says nothing about limiting Plaintiff only to environments with filtered air (Tr. 211-14). In addition, the undersigned would note that atmospheric environments in sandwich shops are, as a general matter, multitudinous. Also, Plaintiff continued to smoke despite testifying that smoking exacerbates his respiratory condition(s) and being told by doctors to cease smoking (Tr. 20, 45, 47, 236). *See* 20 C.F.R. § 404.1530 (concerning importance of following prescribed treatment); *see also Sias v. Sec. of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) ("The Social Security Act did not repeal the principle of individual responsibility. . . . ).

Moreover, Plaintiff's treating physician, Dr. Skelton, reported that Plaintiff's asthma and COPD were not disabling, and that said conditions were controlled by Plaintiff's medication (Tr. 254-55). Conditions that are controlled by medication are not disabling. *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987)[7] (*citing James v. Bowen*, 793 F.2d

---

[6]At the request of the Commissioner, state agency medical consultant, Lynn Harper-Nimock, M.D. performed a physical examination of Plaintiff on November 20, 2006 (Tr. 211-217).

[7]Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

702, 706 (5th Cir. 1986)); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (medical conditions that can reasonably be remedied by medication are not disabling).

Based on the foregoing, the undersigned finds no reversible error in this regard.

Plaintiff last argues that, because Dr. Harper-Nimock did not quantify her restrictions as Dr. Skelton did, the ALJ should have re-contacted Dr. Harper-Nimock and requested that she quantify her findings (Doc. #13 at 9-10).

The Regulations governing the re-contacting consultative examiners state, in pertinent part, "[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). The Regulations also provided that, although the Commissioner will normally request as part of the consultative examiner's report, a medical source statement regarding what a claimant can do, despite his or her limitations, one is not required and the lack of one does not make the record incomplete. 20 C.F.R. § 404.1519n(c)(6).

Here, Dr. Harper-Nimock conducted a thorough physical examination of Plaintiff and offered her opinion(s) regarding his functional limitations (*see* Tr. 211-14). Dr. Harper-Nimock delineated her findings as to Plaintiff's functional limitations in terms of "mild," "moderate," or "marked" (*see* Tr. 214). The ALJ noted that Dr. Harper-Nimock did not quantify her reported limitations; however, the ALJ appears to have understood the limitations assessed by Dr. Harper-Nimock, and proceeded to consider them in accordance with the Regulations (*see* Tr. 22). It should be noted that the Regulations often couch the severity of limitations in terms of "mild," "moderate," "marked," "severe," or "extreme." *See*

16

*e.g.*, 20 C.F.R. Pt. 404, Subpt. P, app. 1; 20 C.F.R. §§ 404.1520a; 416.927; 416.902; 416.994a; 416.924b. Furthermore, it is the province of the Commissioner to determine a claimant's RFC based upon the record evidence as a whole, and opinions regarding disability (or lack thereof) relate to an issue that is specifically reserved to the Commissioner. 20 C.F.R. §§ 404.1545; 404.1546; 404.1520(f).

Accordingly, the undersigned finds the ALJ was not required to re-contact Dr. Harper-Nimock under the facts presented.

Based on the foregoing, the undersigned finds the ALJ's RFC determination was based on substantial evidence of record.

### V. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and that it is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of September, 2010.

Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge